Tina M. Ezzell (SBN: 013825)
Gayathiri Shanmuganatha (SBN: 030745)
**TB TIFFANY & BOSCO** P.A.
SEVENTH FLOOR CAMELBACK ESPLANADE II
2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-4237
TELEPHONE: (602) 452-2747
FACSIMILE:   (602) 255-0103
E-Mail: tme@tblaw.com
E-Mail: gs@tblaw.com
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| CNA National Warranty Corporation, an Arizona Corporation;<br><br>                               Plaintiff,<br><br>     vs.<br><br>RHN, INC., a California Corporation, dba Nissani Brothers Nissan; RHH Automotive, Inc., a California Corporation, dba Nissani Brothers Hyundai; RHC Automotive, Inc., a California Corporation, dba Nissani Brothers Jeep Chrysler Dodge; NBA Automotive, Inc., a California Corporation, dba Nissani Brothers Chevrolet; R & H Automotive Group, Inc., a California corporation, dba Nissani Brothers Acura; Hooman Nissani, Melody Nissani, and JOHN DOES I through V, inclusive; JANE DOES I through V, inclusive; ABC CORPORATIONS I through V, inclusive, and XYZ PARTNERSHIPS, I through V, inclusive,<br><br>                               Defendants. | Case No.<br><br>**VERIFIED COMPLAINT** |

    For its Complaint, Plaintiff CNA National Warranty Corporation ("CNAN") alleges as follows:

Verified Complaint- Page **1** of **13**

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff CNAN is an Arizona corporation with its principal place of business in Maricopa County, Arizona.

2. Defendant RHN, Inc. is a California Corporation with its principal place of business in California and is doing business as Nissani Brothers Nissan.

3. Nissani Brothers Nissan is an automobile dealership selling new and used motor vehicles and various ancillary products such as vehicle service contracts, GAP waivers, and tire and wheel service contracts.

4. Defendant RHH Automotive, Inc. is a California Corporation with its principal place of business in California and is doing business as Nissani Brothers Hyundai.

5. Nissani Brothers Hyundai is an automobile dealership selling new and used motor vehicles and various ancillary products such as vehicle service contracts, GAP waivers, and tire and wheel service contracts.

6. Defendant RHC Automotive, Inc. is a California Corporation with its principal place of business in California and is doing business as Nissani Brothers Jeep Chrysler Dodge.

7. Nissani Brothers Jeep Chrysler Dodge is an automobile dealership selling new and used motor vehicles and various ancillary products such as vehicle service contracts, GAP waivers, and tire and wheel service contracts.

8. Defendant NBA Automotive, Inc. is a California Corporation with its principal place of business in California and is doing business as Nissani Brothers Chevrolet.

9. Nissani Brothers Chevrolet is an automobile dealership selling new and used motor vehicles and various ancillary products such as vehicle service contracts, GAP waivers, and tire and wheel service contracts.

10. Defendant R & H Automotive Group, Inc. is a California Corporation with its principal place of business in California and is doing business as Nissani Brothers Acura.

11. Nissani Brothers Acura is an automobile dealership selling new and used motor vehicles and various ancillary products such as vehicle service contracts, GAP waivers, and tire and wheel service contracts.

12. Hooman Nissani is a married man residing in California.

13. Melody Nissani is residing in California, is the spouse of Hooman Nissani, and is named as a defendant herein under Arizona Revised Statute §25-215 (D).

14. Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332 (a)(1). The amount in controversy exceeds $75,000 and complete diversity exists between the Plaintiff and the Defendants.

15. Venue is proper in this Court because the parties entered into written contracts requiring venue for any action between them pertaining to those contracts be Arizona, because CNAN is an Arizona entity, and because the actions giving rise to the claims against Defendants occurred in Arizona or were directed towards CNAN in Arizona.

16. Collectively, Nissani Brothers Nissan, Nissani Brothers Hyundai, Nissani Brothers Jeep Chrysler Dodge, Nissani Brothers Chevrolet and Nissani Brothers Acura may be referred to herein as "the Dealers." The Dealers and Hooman and Melody Nissani may be referred to collectively as "the Defendants."

17. The exact names and identities of Defendants identified herein as John Does I through V, inclusive; Jane Does I through V, inclusive; ABC Corporations I through V, inclusive; and XYZ Partnerships I through V, inclusive, are unknown to Plaintiff at this time, and Plaintiff is without knowledge and information regarding any other individuals who might be responsible for the damages hereinafter alleged, but will seek leave to amend this Complaint upon receipt of any such information.

## ALLEGATIONS COMMON TO ALL COUNTS

18. To induce CNAN to advance funds to RHN, Inc. for the Dealers in the amount of $5 million ("Advance"), Defendant Hooman Nissani agreed to sign a personal guaranty and represented, verbally and in writing, that he had significant assets, including multiple real properties located in Los Angeles County, California.

19. On October 20, 2017, Hooman Nissani sent to CNAN a written financial statement entitled "HOOMAN MICHAEL NISSANI Statement of Assets, Liabilities, & Net Worth As Of 07/10/17" ("Hooman Nissani Financial Statement").

20. The Hooman Nissani Financial Statement shows Hooman Nissani as the 100% owner of eight separate parcels of real estate, and a partial owner of eleven additional parcels of real estate, as well as the 100% owner of $3,075,000.00 of "Cash in Bank & Escrow."

21. The Hooman Nissani Financial Statement shows substantial equity in all but one of the parcels of real property listed in it as fully or partially owned by Hooman Nissani.

22. CNAN relied upon the representations in the Hooman Nissani Financial Statement.

23. The parties entered into a contract entitled DEALERSHIP OVERRIDE AGREEMENT WITH ADVANCE PAYMENT, effective January 1, 2018 ("Override Agreement"). A true and correct copy of the Override Agreement is attached hereto as Exhibit A.

24. The Override Agreement provides that upon the parties' execution of the Override Agreement and Hooman Nissani's execution of a Personal Guaranty and Suretyship Agreement (Personal Guaranty), CNAN would provide the Advance to RHN, Inc. on behalf of the Dealers.

25. Hooman Nissani executed the Personal Guaranty on December 29, 2017.

26. CNAN provided the $5 million Advance to RHN, Inc. in January 2018.

27. But for Hooman Nissani's representations in the Hooman Nissani Financial Statement and Hooman Nissani's execution of the Personal Guaranty, CNAN would not have made the Advance.

28. Contrary to his representations, Hooman Nissani does not own the California real property listed in the Hooman Nissani Financial Statement with the exception of a heavily-encumbered real property residence on Cielo Drive in Beverly Hills.

29. Hooman Nissani's representation in October 2017 in the Hooman Nissani Financial Statement that the Cielo Drive property was encumbered with a mortgage of only $1.78 million was false as the encumbrances on that property were at that time (and still are are) far greater.

30. The Override Agreement establishes the method and timing by which the Dealers and Hooman Nissani were required to repay the Advance to CNAN.

31. Under the Override Agreement, the Dealers were required to sell, per month, 390 vehicle service contracts administered by CNAN ("VSCs"), 157 tire and wheel service contracts administered by CNAN, and 250 GAP waivers administered by CNAN.

32. Out of proceeds from the Dealers' sales of the VSCs referenced in the immediately preceding paragraph which would otherwise belong to the Dealers, the Dealers were required to remit to CNAN no less than $104,167.00 per month towards repayment of the Advance.

33. The required remittance was to be accomplished through the Defendants' assignment and payment of $267 per VSC to CNAN.

34. Additionally, the Dealers agreed to pay shortfall fees ("Shortfall Fees") if they did not sell the requisite number of VSCs, tire and wheel service contracts, and GAP waivers set forth in paragraph 31, above.

35. When the Dealers sold to consumers the VSCs, tire and wheel service contracts, and GAP waivers administered by CNAN, the Dealers were required to pay

1  CNAN for these contracts by the 10th day of the month following the sales. Though customers might pay the Dealers for the contracts, the contracts would not be placed in force without payment to CNAN for the contracts.

36. Through the Override Agreement, the Dealers agreed to actively participate in the CNAN programs and not to terminate any of the administration agreements for the VSCs, tire and wheel service contracts, and GAP waivers for at least 48 months, or longer if the Advance was not fully repaid within 48 months.

37. Hooman Nissani agreed to cause the Dealers to perform under the Override Agreement, including to sell the required number of VSCs, tire and wheel service contracts, and GAP waivers, fully repay the Advance, and pay Shortfall Fees. A true and correct copy of the Personal Guaranty is attached hereto as Exhibit B.

38. Hooman Nissani agreed to pay all of the Defendants' obligations under the Override Agreement. See Exhibit B hereto.

39. Under the Override Agreement, if the Defendants materially breached the terms of the Override Agreement, including by failing to repay the Advance through monthly payments of at least $104,167.00 per month and by failing to actively participate in CNAN programs and sell the requisite number of contracts, CNAN could, with 30 days' written notice, declare any and all outstanding funds owed to CNAN immediately due and payable by Defendants. See Exhibit A hereto.

## COUNT ONE

**Breach of Contract (Override Agreement) – All Defendants**

40. CNAN incorporates into this count all of the allegations in the preceding paragraphs.

41. In July, 2018, the Defendants began to fail to sell the requisite number of VSCs, tire and wheel service contracts, and GAP waivers administered by CNAN, causing them to fall behind in making their required minimum monthly payments for repayment of the Advance.

42. Defendants' failures to sell and remit payment to CNAN for the requisite number of CNAN contracts continued, with zero payment for contracts in October, 2018.

43. The Override Agreement required Defendants to immediately pay CNAN the difference between the minimum monthly payment of $104,167.00 and the amount applied to Defendants' repayment of the Advance by virtue of sales of VSCs in any month in which the amount applied was less than the required minimum payment, but Defendants never did so.

44. Defendants' deficit in the cumulative amount they owed for repayment of the Advance increased over time.

45. Defendants also drastically diminished their participation in CNAN programs in late 2018.

46. Upon information and belief, Defendants failed to forward to CNAN a number of payments it received from purchasers of VSCs.

47. Despite the assessment and accumulation of Shortfall Fees, the growing deficit toward repayment of the Advance and multiple communications between CNAN and Defendants, Defendants did not cure their material breaches of the Override Agreement.

48. Therefore, on February 8, 2019, CNAN provided Defendants the 30 days' written notice of material breach required by the Override Agreement.

49. On March 20, 2019, CNAN declared due and immediately payable the entire outstanding amounts owed under the Override Agreement.

50. CNAN has been damaged by the Defendants' material breaches of the override agreements in an amount to be proven at trial but well in excess of $5.7 million.

51. This case arises out of contract. Therefore, CNAN is entitled to recover its costs and attorney fees from Defendants pursuant to Arizona Revised Statutes (A.R.S.) §§12-341 and 12-341.01.

52. CNAN is entitled to pre-and post-judgment interest at the rate of 10% per annum under A.R.S §44-1201.

## COUNT TWO
**Breach of Implied Covenant of Good Faith and Fair Dealing (Override Agreement)- All Defendants**

53. CNAN incorporates into this count all of the allegations in the preceding paragraphs.

54. Implied in every contract is a covenant of good faith and fair dealing which prohibits a party to a contract from depriving another party to the contract of the benefits of its bargain.

55. Defendants have taken certain actions and failed to take other actions, all of which have deprived CNAN of the benefits of its bargain reflected by the Override Agreement and damaged CNAN.

56. This case arises out of contract. Therefore, CNAN is entitled to recover from Defendants its costs and attorney fees pursuant to A.R.S. §§12-341 and 12-341.01.

57. CNAN is entitled to pre-and post-judgment interest at the rate of 10% per annum under A.R.S §44-1201.

## COUNT THREE
**Breach of Contract (Personal Guaranty) - Nissanis**

58. Plaintiff incorporates into this count all of the allegations in the preceding paragraphs.

59. Hooman Nissani failed to cause the Dealers to comply with their obligations under the Override Agreement, thereby materially breaching the Personal Guaranty.

60. Despite demand, Hooman Nissani failed to pay the outstanding balance of the Advance and Shortfall Fees, thereby materially breaching the Personal Guaranty.

61. CNAN has been damaged by Hooman Nissani's material breaches of the Personal Guaranty.

62. Hooman and Melody Nissani are liable for the entire principal balance of the advance and all shortfall fees and any and all other obligations the Dealers had but failed to satisfy under the Override Agreement.

63. The Personal Guaranty contains a non-discretionary attorney's fee provision whereby Hooman and Melody Nissani are liable to pay CNAN's expenses and reasonable attorney's fees incurred by CNAN in enforcing its rights.

64. Additionally, this case arises out of contract. Therefore, CNAN is also entitled to recover its costs and attorney fees from Hooman and Melody Nissani pursuant to A.R.S. §§12-341 and 12-341.01.

65. CNAN is entitled to pre-and post-judgment interest at the rate of 10% per annum under A.R.S §44-1201

## COUNT FOUR
### Breach of Implied Covenant of Good Faith and Fair Dealing (Personal Guaranty)-Nissanis

66. CNAN incorporates into this count all of the allegations in the preceding paragraphs.

67. Implied in every contract is a covenant of good faith and fair dealing which prohibits a party to a contract from depriving another party to the contract of the benefits of its bargain.

68. Hooman Nissani has taken certain actions and failed to take other actions, all of which have deprived CNAN of the benefits of its bargain as reflected in the Personal Guaranty and damaged CNAN.

69. The Personal Guaranty contains a non-discretionary attorney's fee provision whereby Hooman and Melody Nissani are liable to pay CNAN's expenses and reasonable attorney's fees incurred by CNAN in enforcing its rights.

70. Additionally, this case arises out of contract. Therefore, CNAN is also entitled to recover from Hooman and Melody Nissani its costs and attorney fees pursuant to A.R.S. §§12-341 and 12-341.01.

71. CNAN is entitled to pre-and post-judgment interest at the rate of 10% per annum under A.R.S §44-1201.

## COUNT FIVE
### Intentional Misrepresentation-Nissanis

72. CNAN incorporates into this count all of the allegations in the preceding paragraphs.

73. In late 2017, including on October 20, 2017 in the Hooman Nissani Financial Statement, Hooman Nissani made false and material misrepresentations about what property he owned, the encumbrances on the single California property he actually owned and his personal financial condition and resources.

74. When making the misrepresentations, Hooman Nissani knew they were false or was ignorant of the truth of the misrepresentations.

75. Hooman Nissani intended that CNAN would act upon his misrepresentations by providing Defendants with the Advance.

76. CNAN was ignorant of the falsity of Hooman Nissani's misrepresentations.

77. CNAN relied upon the truth of Hooman Nissani's misrepresentations by providing the Advance.

78. CNAN had the right to rely upon the truth of the misrepresentations.

79. As a consequent and proximate result of CNAN's reliance upon the truth of Hooman Nissani's misrepresentations, CNAN was damaged.

80. Hooman Nissani acted with reckless and wanton disregard of CNAN's rights, thereby entitling CNAN to punitive damages against him and his marital community.

## COUNT SIX
### Negligent Misrepresentation-Nissanis

81. CNAN incorporates into this count all of the allegations in the preceding paragraphs.

82. In the course of his business, profession or employment, and in connection with a transaction in which he had a pecuniary interest, Hooman Nissani supplied false information for the guidance of CNAN in its business transactions.

83. Hooman Nissani failed to exercise reasonable care or competence in obtaining or communicating to CNAN information pertaining to his property ownership, personal finances, resources and financial condition.

84. Hooman Nissani knew the Hooman Nissani Financial Statement would be supplied to CNAN and intended it to influence CNAN's decision about whether or not to provide Defendants the Advance.

85. CNAN justifiably relied upon the false personal financial information supplied by Hooman Nissani.

86. CNAN was damaged as a result of its reliance upon the false financial information about Hooman Nissani.

87. Hooman Nissani acted with reckless and wanton disregard of CNAN's rights, thereby entitling CNAN to punitive damages against him and his marital community

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a. Awarding Plaintiff damages and prejudgment interest at the rate of 10% per annum in an amount to be proven at trial which, through the end of May, 2019, is $6,046,092.00;

b. Awarding Plaintiff its costs and attorney's fees incurred herein pursuant to the terms of the Personal Guaranty and Arizona law, including A.R.S. §§12-341 and 12-341.01.;

      c.      Awarding Plaintiff post-judgment interest at the rate of 10% per annum;

      d.      Awarding Plaintiff punitive damages against the Nissanis and any entity that assisted Hooman Nissani to provide CNAN false financial information; and

      e.      Awarding Plaintiff such further relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED this 20th day of June, 2019.

TIFFANY & BOSCO, P.A.

By: _/s/*Tina M. Ezzell*_____
      Tina M. Ezzell
      Gayathiri Shanmuganatha
      2525 East Camelback Road, Seventh Floor
      Phoenix, Arizona 85016
      *Attorneys for Plaintiff*

## VERIFICATION

I, John K. Loughlin, state the following:

I am the CFO for CNA National Warranty Corporation in the above-referenced case. I have read the foregoing Verified Complaint, and the facts as stated therein are true of my own knowledge except as to those matters and things stated upon information and belief, and as to those, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20th day of June, 2019.

_____
(Signature)
John K. Loughlin, CFO, CNA National Warranty Corporation